IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THE UNITED STATES OF AMERICA,
and THE STATE OF INDIANA,

        Plaintiffs,

        v.

BP PRODUCTS NORTH AMERICA
INC.,

        Defendant.

Case No. 2:23-cv-166

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana ("Indiana"), by the authority of the Indiana Attorney General, acting at the request of the Indiana Department of Environmental Management ("IDEM") (collectively "Plaintiffs"), file this Complaint and allege as follows:

## NATURE OF ACTION

1.      This is a civil action brought by the Plaintiffs against BP Products North America Inc., ("BPP") pursuant to Sections 113(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(b), and Ind. Code §§ 13-13-5-1 and 13-13-5-2, for violations of the CAA at BPP's petroleum refinery located at 2815 Indianapolis Boulevard in Whiting, Indiana (the "Whiting Refinery").  The Plaintiffs seeks the assessment of civil penalties and appropriate injunctive relief based on these violations.

1

2.      The Plaintiffs allege that BPP has violated and continues to violate the following

CAA statutory and regulatory requirements that are applicable to the Whiting Refinery:

a.  The New Source Performance Standards ("NSPS") for VOC emissions from Petroleum Refinery Wastewater Systems promulgated at 40 C.F.R. Part 60, Subpart QQQ, ("Subpart QQQ"), pursuant to Section 111 of the CAA, 42 U.S.C. § 7411;

b.  The National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene Waste Operations promulgated at 40 C.F.R. Part 61, Subpart FF, ("Subpart FF"), pursuant to Section 112 of the CAA, 42 U.S.C. § 7412;

c.  The NSPS and NESHAP general provisions promulgated at 40 C.F.R. Part 60, Subpart A, and 40 C.F.R. Part 61, Subpart A; and

d.  The portions of the "Title V" permit for the Whiting Refinery that adopt, incorporate, or implement the provisions cited in Subparagraphs 2.a–2.c.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1331, 1345, 1355, 1367.  This Court has

personal jurisdiction over BPP, which does business in Indiana and in this District.

4.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over state law

claims asserted by Indiana pursuant to Rule 326 of the Indiana Administrative Code and the rules

adopted thereunder.

5.      Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b) and 28 U.S.C. §§ 1391(b), (c), 1395(a), because the alleged violations in this

Complaint occurred and are occurring at the Whiting Refinery which is located in this District.

## AUTHORITY

6.      Authority to bring this action is vested in the United States Department of Justice pursuant to Sections 113(b) and 305(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7605(a) and under 28 U.S.C. §§ 516 and 519.

7.      Authority to bring this action for the People of the State of Indiana is vested in the Indiana Attorney General.  The Indiana Attorney General is the chief legal officer of the State of Indiana, having the powers and duties prescribed by the law, Ind. Code § 4-6-1-6.  Under Ind. Code § 4-6-3-2, the Indiana Attorney General has charge of and directs the prosecution of all civil actions brought in the name of the State of Indiana or any state Agency.  Pursuant to Ind. Code § 13-13-5-1, IDEM is charged with the administration and enforcement of the requirements for air pollution control for Indiana for all purposes of the federal CAA.  Pursuant to Ind. Code § 13-13-5-2, IDEM may take any action necessary to secure for Indiana the benefits of the federal statutes described in Ind. Code § 13-13-5-1, which includes the federal CAA, as amended by the CAA Amendments of 1990.

## NOTICE

8.      EPA issued two Finding of Violation notices ("FOVs")—one on July 10, 2020, and another on December 16, 2021—identifying CAA violations at the Whiting Refinery.  The FOVs were sent to BPP and Indiana.  Copies of the FOVs are attached hereto as Exhibits 1 and 2.

9.      Notice of the commencement of this action was given to the State of Indiana at least thirty (30) days prior to the filing of this Complaint as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

**DEFENDANT**

10.     Defendant BPP is a corporation formed under the laws of the State of Maryland and doing business in the State of Indiana.

11.     BPP is, and at all times relevant to the Complaint has been, the "owner" and "operator" of the Whiting Refinery, within the meaning of Sections 111(a) and 112(a) of the CAA, 42 U.S.C. §§ 7411(a) and 7412(a).

12.     BPP is a "person" as defined in Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e).

**STATUTORY AND REGULATORY BACKGROUND**

The Clean Air Act

13.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

National Emission Standards for Hazardous Air Pollutants (NESHAP)

14.     Section 112 of the CAA sets forth a national program for the control of hazardous air pollutants ("HAPs").  42 U.S.C. § 7412.

15.     As originally set forth in the CAA Amendments of 1970, Section 112 directed EPA to publish a list of HAPs.  A HAP was defined as "an air pollutant to which no ambient air quality standard is applicable and which in the judgment of the Administrator may cause, or contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness."  42 U.S.C. § 1857c-7 (1971).

16.     At that time, Congress directed EPA to establish HAP standards that provided "an ample margin of safety to protect the public health from such hazardous air pollutant."  *Id.*

17.     Between 1970 and 1990, EPA listed eight substances as HAPs and promulgated emissions standards for seven of them.  H.R. Rep. No. 101-490, pt 1, at 151 (1990).

18.     EPA listed benzene as a HAP under Section 112 in 1977, 42 Fed. Reg. 29332 (June 8, 1977), and later promulgated standards related to the control of benzene in waste operations.  55 Fed. Reg. 8292 (March 7, 1990).

19.     Thereafter, in 1993, EPA finalized the regulations, 58 Fed. Reg. 3072 (January 7, 1993), and published them at 40 C.F.R. Part 61, Subpart FF.  *See* 40 C.F.R. §§ 61.340–61.359. These regulations are commonly referred to as the "Benzene Waste Operations NESHAP," "BWON," or "Subpart FF."

20.     Though the Clean Air Act Amendments of 1990 replaced the then-existing Section 112 and established a new program for the control of HAPs, H.R. Rep. No. 101-490, pt 1, at 324 (1990), the regulations then in existence under the original Section 112 (such as Subpart FF) remained in full force and effect.  *See* 42 U.S.C. § 7412(q)(1).

21.     After the effective date of any emission standard, limitation, or regulation promulgated pursuant to Section 112 of the CAA, no person may operate a source in violation of such standard, limitation, or regulation.  42 U.S.C. § 7412(i)(3).

<u>NESHAP General Provisions</u>
<u>40 C.F.R. Part 61, Subpart A</u>

22.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, as it existed before the 1990 CAA Amendments, EPA promulgated 40 C.F.R. Part 61, Subpart A, which are general provisions applicable to all sources that are subject to the Part 61 NESHAP Regulations.  *See* 40 C.F.R. §§ 61.01–61.19.

23.     NESHAP Subpart A obligates the owner or operator of each stationary source to maintain and operate the source, including associated equipment for air pollution control, in a

manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 61.12(c).

24.     After the effective date of any standard, no owner or operator shall operate a new stationary source subject to that standard in violation of the standard, except under an exemption granted by the President under Section 112(c)(2) of the Act as in effect prior to the 1990 Amendments (Section 112(i)(4) of the present Act).  40 C.F.R. § 61.05.

Benzene Waste Operations NESHAP<br>40 C.F.R. Part 61, Subpart FF

25.     Subpart FF applies to petroleum refineries.  40 C.F.R. § 61.340(a).

26.     Under Subpart FF, a facility is required to tabulate the total annual benzene ("TAB") in its wastewater.  If the TAB is over 10 megagrams ("Mg") (11 ton/yr), the refinery is required to select a control option that will require control of all waste streams, or control of certain selected waste streams.

27.     Under the control option known as the "6 BQ Compliance Option," a facility must control all benzene-containing wastes except for up to 6.0 Mg/yr (6.6 ton/yr) of aqueous benzene-containing wastes.  40 C.F.R. § 61.342(e).

28.     Owners and operators must calculate the benzene quantity for controlled and uncontrolled waste streams to evaluate their compliance with the 6 BQ Compliance Option.  40 C.F.R. §§ 61.342(e)(2), 61.355(k).

29.     Owners and operators must ensure that the following control equipment is designed to operate with the no detectable emissions ("NDE") standard set forth in Subpart FF, defined as a reading of less than 500 parts per million by volume ("ppmv") above background: the cover and all openings on the fixed-roofs of tanks; the cover and all openings on surface impoundments; the cover and all openings on each drain system opening; the cover and all

openings on the fixed-roof for each oil-water separator.  40 C.F.R. §§ 61.343(a)(1)(i)(A), 61.344(a)(1)(i)(A), 61.346(a)(1)(i)(A), 61.347(a)(1)(i)(A).  The foregoing control equipment must be tested at least annually to evaluate compliance with the NDE standard.  *Id*.  Monitoring must comply with Method 21 from Appendix A of 40 C.F.R. Part 60.  40 C.F.R. § 61.355(h).

30.     Engineering design documentation for all control equipment installed on the waste management unit (*e.g.*, tanks, surface impoundments, oil-water separators, individual drain systems) must be prepared and maintained for the life of the control equipment.  40 C.F.R. § 61.356(d).

31.     Unless implementing alternative standards, owners and operators must install, operate and maintain a closed vent system that routes all organic vapors vented from tanks, surface impoundments, drain systems, and oil water separators to a control device.  40 C.F.R. §§ 61.343(a)(1), 61.344(a)(1), 61.346(a)(1), and 61.347(a)(1).  A control device is a closed combustion device, vapor recovery system, or flare.  40 C.F.R. § 61.341.

32.     Under an alternative standard for tanks set forth at 40 C.F.R. § 61.343(b), devices on a tank which vent directly to the atmosphere may be used if each device remains in a closed, sealed position during normal operations, except in certain narrowly defined circumstances.  40 C.F.R. § 61.343(b)(3).

33.     Facilities or units subject to Subpart FF may only be placed on delay of repair ("DOR") if the repair is technically impossible without a complete or partial facility or unit shutdown.  Repair of DOR equipment must occur before the end of the next facility or unit shutdown.  40 C.F.R. § 61.350.

New Source Performance Standards (NSPS)

34.    Section 111(b)(1) of the CAA, 42 U.S.C. § 7411(b)(1), requires EPA to: (a) publish a list of categories of stationary sources that, in its judgment, cause or contribute significantly to air pollution that may reasonably be anticipated to endanger the public health or welfare; and (b) promulgate standards of performance for new sources within those categories. These standards, commonly known as the New Source Performance Standards, are codified at 40 C.F.R. Part 60 and referred to herein as "NSPS" or "NSPS Regulations."

35.    A "stationary source" is a building, structure, facility, or installation which emits or may emit any air pollutant."  42 U.S.C. § 7411(a)(3).  A "new source" is a stationary source, the construction or modification of which is commenced after the publication of the regulations (or, if earlier, proposed regulations) prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).

NSPS General Provisions: 40 C.F.R. Part 60, Subpart A

36.    Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA promulgated NSPS Subpart A, which are general NSPS Regulations that apply to the owner or operator of any stationary source which contains an "affected facility," the construction or modification of which is commenced after the publication of any NSPS (or, if earlier, the date of publication of any proposed standard) applicable to that facility.  40 C.F.R. § 60.1.  An "affected facility" is defined as any apparatus to which a standard is applicable.  40 C.F.R. § 60.2.

37.    NSPS Subpart A applies to all affected facilities, including associated air pollution control equipment, and requires that, at all times, including periods of startup, shutdown, and malfunction, "owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner

consistent with good air pollution control practice for minimizing emissions."  40 C.F.R. §

60.11(d).

38.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator

of a new source from operating any new (*i.e.*, constructed or modified) source in violation of an

NSPS after the effective date of the NSPS applicable to such source.

NSPS for VOC Emissions from Petroleum Refinery Wastewater Systems<br>40 C.F.R. Part 60, Subpart QQQ

39.     Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA promulgated

Subpart QQQ, which applies to the following affected facilities at petroleum refineries:

individual drain systems, oil-water separators, and aggregate facilities that commenced

construction, reconstruction, or modification after May 4, 1987.  40 C.F.R. § 60.690(a).

40.     An "aggregate facility" is an individual drain system together with ancillary

downstream sewer lines and oil-water separators, down to and including the secondary oil-water

separator, as applicable.  40 C.F.R. § 60.691.  An "individual drain system" includes all process

drains connected to the first common downstream junction box and includes all such drain and

common junction boxes together with their associated sewer lines and other junction boxes,

down to the receiving oil-water separator.  An "oil-water separator" is wastewater treatment

equipment used to separate oil from water consisting of a separation tank, which also includes

the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers.  40

C.F.R. § 60.691.

41.     Each individual drain system, oil-water separator, and aggregate facility described above is an "affected facility" subject to the requirements of Subpart QQQ, 40 C.F.R. § 60.690 *et. seq*.

### Title V Permit Program

42.     Title V of the Clean Air Act, 42 U.S.C. §§ 7661–7661f, establishes an operating permit program for certain sources, including major sources and sources subject to Sections 111 ("NSPS program") or 112 ("NESHAP/MACT program") of the CAA.  42 U.S.C. § 7661a(a). The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA are collected in one permit.  42 U.S.C. § 7661c(a).

43.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at 40 C.F.R. Part 70.

44.     The State of Indiana has an EPA-approved Title V program, effective as of November 4, 2001.  66 Fed. Reg. 62969 (Dec. 4, 2001).  Indiana's Title V Permit program requirements are codified at 326 Ind. Admin. Code 2-7.  Indiana is authorized to issue and enforce Title V permits.

45.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), the Title V permit program, and the regulations of Indiana provide that, after the effective date of the state Title V permit program, no person may violate any requirement of a Title V permit.

46.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and the implementing regulations at 40 C.F.R. §§ 70.1(b) and 70.7(b), the Title V permit program, and the regulations

of Indiana provide that, after the effective date of the state Title V permit program, no source

subject to Title V may operate except in compliance with a Title V permit.

47.    All terms and conditions of a Title V permit are enforceable by EPA.  42 U.S.C. §

7413(b); 40 C.F.R. § 70.6(b).

48.    BPP renewed its Title V Permit No. 089-30396-00453 in 2015.  That permit and

its subsequent modifications require compliance with various provisions of Subpart FF, Subpart

QQQ, and the NSPS and NESHAP general provisions.

## CLEAN AIR ACT ENFORCEMENT

49.    Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), authorizes EPA to bring a

civil action under Section 113(b) if EPA finds that any person is in violation of any requirement

or prohibition of the NSPS program, the NESHAP/MACT program, the Title V permit program,

or a Title V permit.  Ind. Code §§ 13-13-5-1 and 13-13-5-2 authorize Indiana to bring a civil

action under the CAA.

50.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a

violation, to require compliance, to assess and recover a civil penalty, and to award any other

appropriate relief for each violation.

51.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes civil penalties of up

to $25,000 per day for each violation of the CAA.  The Civil Penalties Inflation Act of 1990, 28

U.S.C. § 2461 *et seq*., as amended by the Debt Collection Improvements Act of 1996, 31 U.S.C.

§ 3701 *et seq*., as amended by the Federal Civil Penalties Inflation Adjustment Act Improvement

Act of 2015, 28 U.S.C. § 2461 note, Pub. L. 114-74, requires EPA to periodically adjust its civil

penalties for inflation.  Pursuant to those statutory mandates, EPA has adopted and revised

regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under the CAA.

52.    Of relevance to this Complaint, penalties of up to $117,468 per day may be assessed for each violation that occurred after November 2, 2015, where penalties are assessed on and after January 6, 2023.  40 C.F.R. § 19.4.

53.    Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day for any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

## GENERAL ALLEGATIONS

54.    BPP is the "owner or operator," within the meaning of the CAA, of the Whiting Refinery.

55.    The Whiting Refinery is, and at all times relevant herein has been, a "petroleum refinery" within the meaning of Subpart QQQ and Subpart FF.  40 C.F.R. §§ 60.691, 61.341.

56.    The Whiting Refinery is a "source," a "stationary source," and a "major source," within the meaning of the CAA, the NSPS program and regulations, the NESHAP program and regulations, and the Title V program and regulations.

57.    The Whiting Refinery has a Title V permit that has been issued by the State of Indiana.

58.    At all relevant times, the Whiting Refinery contained individual "affected facilities" that are subject to regulation pursuant to Subpart QQQ.

59.    Construction, modification, or reconstruction commenced at the Whiting Refinery after May 4, 1987.

60.     EPA and IDEM conducted an inspection of the Lakefront Wastewater Treatment Plant at the Whiting Refinery on October 19, 2019 ("Inspection").

61.     Following the Inspection, BPP conceded that it could not produce NDE engineering documentation for all control equipment installed on waste management units subject to 40 C.F.R. §§ 61.343–61.347.

62.     BPP subsequently retained two contractors to conduct a BWON program assessment and subsequent field verification (collectively the "Audits") at the Whiting Refinery. The results of the Audits were submitted to the United States in 2021.

63.     Following the Audits and the Inspections, BPP produced additional documents on November 25, 2019, November 27, 2019, and December 2, 2020.

64.     Based on the Inspection findings, the Audits, BPP's subsequent productions, and further investigation, BPP violated the CAA and its implementing regulations as set forth below.

## CLAIM 1
### Violation of Benzene Waste Operation NESHAP, Subpart FF,
### Violation of Title V Permit Provisions that Implement and Enforce these Requirements

65.     Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

66.     As the owner and operator of the Whiting Refinery, BPP is, and at all relevant times has been, subject to Subpart FF.

67.     The Whiting Refinery is a "petroleum refinery" and a "facility" within the meaning of 40 C.F.R. § 61.341.

68.     At all relevant times, the Whiting Refinery had a total annual benzene quantity greater than or equal to 10 Mg/yr as determined by the procedures set forth in 40 C.F.R. § 61.342(a).

13

69.    At all relevant times, BPP elected to comply with the 6.0 Mg/yr also known as the 6 BQ Compliance Option, set forth in 40 C.F.R. § 61.342(e), at the Whiting Refinery.

70.    Pursuant to 40 C.F.R. § 61.342(e), the annual benzene quantity for uncontrolled benzene-containing wastes must be equal to or less than 6.0 Mg/yr.

71.    Based on the Inspection and the subsequent Audits, benzene waste streams that that BPP reported as controlled in its annual TAB reports were uncontrolled.

72.    From at least 2018 through 2021, BPP failed to comply with the selected 6 BQ Compliance Option, in violation 40 C.F.R. § 61.342(e)(2) and its Title V permit.

73.    From at least 2018 through 2021, BPP failed to provide accurate information in its annual reports, including the total annual benzene quantity for the Whiting Refinery, a table identifying each waste stream as "controlled" or not, and information about each waste stream that is not controlled for benzene emissions, as required by 40 C.F.R. § 61.357(a), (d).

74.    BPP failed to accurately calculate the total annual benzene quantity for the Whiting Refinery by omitting at least three waste streams from its benzene waste stream inventory in violation of 40 C.F.R. §§ 61.355(a), (k), 61.357(d) and its Title V permit.

75.    BPP failed to comply with the NDE standard applicable to various waste management units at the Whiting Refinery including tanks, surface impoundments, oil-water separators, and individual drain systems in violation of 40 C.F.R. §§ 61.343(a)(1)(i)(A), 61.344(a)(1)(i)(A), 61.346(a)(1)(i)(A), 61.347(a)(1)(i)(A) and its Title V permit.

76.    BPP failed to keep openings from surface impoundments, individual drain systems, and oil water-separators in a closed, sealed position in violation of 40 C.F.R. §§ 61.344(a)(1)(i)(B), 61.346(a)(1)(i)(B), 61.347(a)(1)(i)(B) and its Title V permit.

77.     BPP failed to route organic vapors from various waste management units at the Whiting Refinery, including tanks, surface impoundments, oil-water separators, and individual drain systems, through a closed-vent system to a control device in violation of 40 C.F.R. §§ 61.343(a)(1), 61.344(a)(1), 61.346(a)(1), 61.347(a)(1) and its Title V permit.

78.     BPP failed to maintain devices which vent directly to the atmosphere in a closed, sealed position during normal operation in violation of 40 C.F.R. § 61.343(b)(3) and its Title V permit.

79.     BPP failed to conduct inspections of various individual drain systems within the Whiting Refinery as required by 40 C.F.R. § 61.346(a)(2) and its Title V permit.

80.     BPP failed to maintain engineering design documentation for control equipment installed on waste management units at the Whiting Refinery in violation of 40 C.F.R. § 61.356(d) and its Title V permit.

81.     BPP placed multiple units, including DNF Tanks 320, 330, and 340, on DOR even though sequential repair was possible without a complete or partial unit shutdown in violation of 40 C.F.R. § 61.350(a) and its Title V permit.  During the Inspection, EPA identified NDE exceedances at several distinct locations on each DNF tank.

82.     Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

83.     For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, BPP is subject to injunctive relief and civil penalties of up to $117,468 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after January 6, 2023.

84.    As a result of the above-listed violations, pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, BPP is liable to Indiana for injunctive relief and civil penalties not to exceed $25,000 per day for each violation.

**CLAIM 2**
**Violation of Standard of Performance for VOC Emissions from**
**Petroleum Refinery Wastewater Systems, NSPS Subpart QQQ,**
**Violation of Title V Permit Provisions that Implement and Enforce these Requirements**

85.    Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

86.    At all relevant times, BPP owned and operated "affected facilities," including individual drain systems and oil-water separators, at the Whiting Refinery that are subject to Subpart QQQ.  *See* 40 C.F.R. §§ 60.690–60.699.

87.    From at least October 2, 2020, BPP failed to maintain drains with water seal controls in violation of 40 C.F.R. § 60.692-2(a)(1) and its Title V permit.

88.    From at least October 2, 2020, BPP failed properly seal junction box covers in violation of 40 C.F.R. § 60.692-2(b)(2) and its Title V permit.

89.    From at least October 2, 2020, BPP failed to maintain a vent pipe of at least 90 cm (3 ft) in length on at least one junction box in violation of 40 C.F.R. § 60.692-2(b)(1) and its Title V permit.

90.    From at least October 2, 2020, BPP failed to maintain sewer lines that are closed to the atmosphere and covered or enclosed so as to have no visual gaps or cracks in joints, seals, or other emission interfaces in violation of 40 C.F.R. § 60.692-2(c)(1) and its Title V permit.

91.    From at least October 2, 2020, BPP failed to inspect drains, junction boxes, and sewer lines at the required intervals in violation 40 C.F.R. § 60.692-2(a)(2), (b)(3), (c)(2) and its Title V permit.

92.     From at least October 2, 2020, BPP failed to timely initiate efforts at repair of drains, junction boxes, and sewer lines in violation of 40 C.F.R. § 60.692-2(a)(5), (b)(4), (c)(3) and its Title V permit.

93.     Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

94.     For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, BPP is subject to injunctive relief and civil penalties of up to $117,468 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after January 6, 2023.

95.     As a result of the above-listed violations, pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, BPP is liable to Indiana for injunctive relief and civil penalties not to exceed $25,000 per day for each violation.

## CLAIM 3
### Violation of NESHAP and NSPS General Requirements, Failure to Operate Consistent With Good Air Pollution Control Practices for Minimizing Emissions, Violation of Title V Permit Provisions that Implement and Enforce these Requirements

96.     Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

97.     BPP was and is required to operate the Whiting Refinery, including associated equipment for air pollution control, in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 61.12(c).

98.     BPP was and is required, at all times, including periods of startup and shutdown, to the extent practicable, to maintain and operate any affected facility within the Whiting

Refinery, including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 60.11(d).

99.     The requirement to operate in accordance with good air pollution control practices set forth in the NSPS and NESHAP general provisions is incorporated by reference into BPP's Title V permit.

100.     At various times during 2019–2021, BPP used caulking to seal gaps, cracks, and leaks in affected facilities and waste management units without having developed engineering design specifications.  BPP failed to perform preventative maintenance after caulking and failed to account for outdoor exposure and other process elements (*e.g.*, temperature, pressure).

101.     In 2019, BPP continued to operate DNF 330 on DOR while a piece of wood with the word "LEAK" written on it was caulked onto the unit as a means to identify and seal a leak.

102.      At various times in 2019 and 2020, BPP used wooden plugs to seal off drain cups, cleanouts, atmospheric drains, and other components of individual drain systems.

103.     At various times in 2019 and 2020, individual drain system drains were observed with an oil or hydrocarbon layer where water seal controls were required.

104.     At various times in 2019 and 2020, BPP used fire blankets and sandbags to seal drains when no maintenance work was being performed nearby.  In some instances, the fire blankets and sandbags were attached to the drain with wiring, preventing the visual inspection of the water seals.

105.     At all times prior to November 2020, BPP operated portions of the bar screen that were open to the atmosphere and were therefore not designed to achieve NDE.  During the Inspection, EPA observed cracks and significant odor emanating from the bar screen.

106.    Since November 2020, BPP has used a tarp to temporarily seal portions of the bar screen that were not designed to achieve NDE.

107.    At various times in 2020 and 2021, BPP failed to ensure the grit chamber floating roof maintained contact with the liquid level in the grit chamber, resulting in excess benzene emissions.

108.    At each of the above-described locations, as stated in the FOVs, there were excess emissions of benzene and volatile organic compounds.

109.    The above-described actions and omissions constitute the failure by BP to exercise good air pollution control practices in violation of 40 C.F.R. § 60.11(d) and 40 C.F.R. § 61.12(c).

110.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

111.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, BPP is subject to injunctive relief and civil penalties of up to $117,468 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after January 6, 2023.

112.    As a result of the above-listed violations, pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, BPP is liable to Indiana for injunctive relief and civil penalties not to exceed $25,000 per day for each violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

113.    Enjoin BPP from operating the Whiting Refinery except in accordance with the statutory and regulatory requirements cited herein;

114.    Order BPP to immediately comply with the statutory and regulatory requirements cited herein;

115.    Order BPP to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged herein;

116.    Assess civil penalties against BPP for up to the amounts provided by applicable law;

117.    Award Plaintiffs their costs and expenses incurred in this action; and

118.    Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United State Department of Justice

/s/ Zachary N. Moor
ZACHARY N. MOOR (MA Bar No. 681469)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Tel: (202) 514-4185
Fax: (202) 514-0097
Email: zachary.moor@usdoj.gov

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

/s/ Wayne T. Ault
WAYNE T. AULT
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
Tel: 219-937-5500
Fax: 219-852-2770
Email: wayne.ault@usdoj.gov

OF COUNSEL:

MARY McAULIFFE
CHRISTOPHER GRUBB
United States EPA, Region 5
77 W. Jackson Blvd.
Chicago, IL 60604

THE STATE OF INDIANA

TODD ROKITA
INDIANA ATTORNEY GENERAL


/s/ Meredith McCutcheon
MEREDITH MCUTCHEON
Deputy Attorney General
Office of Attorney General Todd Rokita
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Tel: (317) 233-9357
Fax: (317) 232-7979
Email: Meredith.McCutcheon@atg.in.gov